IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| LONNIE CLEMONT ENCALADE | § | |
| | § | CIVIL ACTION NO. 9:04cv214 |
| DAVID STACKS, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Lonnie Encalade, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

In his complaint and testimony at an evidentiary hearing, Encalade says that since September of 2003, the Defendants have failed to provide dishwashers at the Eastham Unit, but instead are washing cups, spoons, trays, and drinking pitchers in 55 gallon garbage cans. Encalade says that this "undermines the health" of the inmates at the Eastham Unit, as well as violating various state health codes.

Encalade states that as a result of these practices, medical prisoners on the L-line medical wing had to be shipped to other prison units because of "an outbreak of contagious diseases." Encalade says that this caused several wings to be quarantined in September of 2004, although he does not indicate that he was among those who were quarantined; he speculates that the only way that the prisoners could have contracted these diseases was by using the unsanitary utensils.

Encalade attaches an affidavit from an inmate named Mike Tomlinson, who affirms Encalade's statement that food utensils have been washed in garbage cans. He also has an affidavit from an inmate named Stephen Carey, who says that he has been "poisoned" "by the food service

department at Eastham and that he was "blinded and sent to the hospital" because of the unsanitary food service, although he offers no facts as to the specific illness from which he suffered, nor does he link this illness to the food service.

Encalade also says that sheets are returned "wet and dirty" from the laundry, towels are left for months without washing on L-line, and an inmate died after lunch on October 4, 2004, although Encalade does not specify the cause of death. He says that inmates are getting sick and that his stomach hurt from "dirty food utensils."

Encalade also complained about the water at the unit. He said that the drinking pitchers and cups were not cleaned sufficiently and so they had "food particles" left in them. He added that the inmates did not receive an adequate supply of clean towels. For relief, Encalade sought one penny in damages, as well as injunctive relief to correct the conditions about which he complains.

The Defendants have been ordered to answer and have done so. Encalade has filed numerous remarkably strident pleadings in various forms reiterating his claims. He claims that the Defendants are engaging in biological warfare and torture, that he is being subjected to medical experimentation without his consent, that the Clean Water Act of 1972 is being violated, that United Nations rules governing the treatment of prisoners are being violated, that the Texas Health and Safety Code and Government Code are being violated, that another inmate named Jimmy Copeland has "been sick for a long time," inmates are being subjected to "bacteria weapons" and genocide, the lack of dishwashers in a state prison violates Article I of the U.S. Constitution because it exceeds Congress' power to tax and regulate commerce throughout the United States and has an effect on interstate commerce, and the lack of dishwashers violates the European Convention on Human Rights and the U.S. anti-torture statute.

The parties have been ordered to file motions for summary judgment in support of their respective positions. In his motion for summary judgment, Encalade says that there have not been dishwashers at the Eastham Unit for over two years, from September of 2003 until the motion was filed in October of 2005. He again argues that this violates Article I of the U.S. Constitution, the

federal anti-torture statute, and the regulations of the Federal Bureau of Prisons. Encalade says, without offering specifics, that he has suffered "digestive disease" since September of 2003, and adds that he is being deprived of safe and decent conditions in the prison.

The Defendants' motion for summary judgment first argues that Encalade has failed to exhaust his administrative remedies. They note that the grievances which Encalade attaches to his complaint as proof of exhaustion were all screened (i.e. returned unprocessed) because Encalade did not follow the proper rules for submission of grievances. They add that even if the Court accepts Encalade's assertion that he properly grieved his complaints, however, he has still failed to exhaust because he did not mention the names of three of the Defendants (Stacks, Reescano, and Killingsworth), and says that Wakefield was "unavailable for comment." Thus, the Defendants say, Encalade has not complained of any acts or omissions by these individuals.

Second, the Defendants contend that Encalade lacks standing to assert the constitutional rights of other inmates at the Eastham Unit. They note that Encalade repeatedly complains that other inmates have died, become ill, or been quarantined as a result of the conditions complained of, and argues that these claims should be dismissed for lack of standing.

Next, the Defendants contend that Encalade has not shown that any named Defendants have acted with the requisite mental state of subjective recklessness. Instead, they say, he simply argues that the kitchen staff at the Eastham Unit wash dishes in 55-gallon garbage cans and that this practice is unsanitary. Encalade said at the hearing that the dishes are washed in soap and water, rinsed in sinks, and then placed back on the food service line, which he calls "a three-compartment sink system." The Defendants state that Encalade has failed to show proof of any epidemics at the Eastham Unit, much less show that these are linked to the dishwashing procedures. The Defendants point out that at the evidentiary hearing, the Magistrate Judge observed that just because the receptacle was called a "trash can" did not mean that it contained any trash.

Fifth, the Defendants state that to prevail, Encalade must show that he has suffered an injury which is more than *de minimis*, and contend that he has failed to do so. They maintain that Encalade

has not shown that he suffered any contagious diseases as a result of the conditions complained of, but merely said that his stomach hurt. Finally, the Defendants assert that they are entitled to Eleventh Amendment immunity for claims against them in their official capacities, and to qualified immunity for claims against them in their individual capacities.

In his response to the Defendants' motion, Encalade says that the conditions at Eastham amount to a "food service Death Row." He concedes that new dishwashers were installed in October of 2005, but says that these have been inoperable because of plumbing and sewage problems. He again argues that other inmates are ill and that this poses a danger to the remainder, and complains that the Defendants' actions violate state law and the Texas prison regulations.

Encalade reiterates that he has suffered "serious digestive system injuries," but offers no details or facts. He says that he has the right not to be used as a "state experiment" or "research lab monkey," as well as the right to be free from genocide, torture, bacteriological germ warfare, and physical and psychological torture. He further says that prison officials violate the Eighth Amendment when they expose prisoners to unreasonable risk of serious harm.

Legal Standards and Analysis

General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th

Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the nonmovant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Application of the Standards in the Present Case

The Defendants first assert that Encalade has not exhausted his administrative remedies, based on the grievances which he attached to his complaint. However, records produced at the Spears hearing show that Encalade has filed a substantial number of grievances regarding the conditions complained of. In grievance no. 8625 (last four digits only given for convenience), Encalade stated that he checked the "public health policy books," which said that dishwashing equipment should be equipped with working temperature gauges in accordance with public health requirements. There was no mention of the "three compartment sink system" used at Eastham, nor of the use of garbage cans for washing dishes. Encalade also says that he has been told that the food service department was not using hot water for dishwashing. The response to this grievance, dated March 3, 2005, was that the three compartment sink method is used for washing and sanitizing eating ware and the water in the no. 3 compartment is changed frequently.[1]

In grievance no. 2660, Encalade complained that the Eastham Unit had not had a working dishwasher since September of 2003, which resulted in a quarantine of L-line medical inmates. The response was that Killingsworth, the food service manager, said that all eating ware was being cleaned and sanitized. In his Step Two appeal, Encalade cited various legal standards which he said were applicable, and the response, dated December 2, 2004, was that he had been appropriately advised and that the eating ware is being cleaned and sanitized.

In grievance no. 4775, Encalade complained that inmate food trays were being washed in garbage cans and that a washing machine was necessary. The response was that the spoons, cups, and trays are all being sanitized using the three compartment sink method, and that a 50 ppm bleach solution is used for sanitization. In his Step Two grievance, Encalade questions why, if this is such a good system, it is not used in the officers' dining hall, and complains that it leads to the spread of

---

[1]In the three-compartment sink system, the first compartment is for washing, the second is for rinsing, and the third is for sanitizing, either with hot water or chemically. *See, e.g.*, http://chd.region.waterloo.on.ca/web/health.nsf/vwSiteMap/E92E158CD70F9C898525711B005C5D7C/$file/Front%20Burner_2005.pdf.

disease. The Step Two response, dated December 18, 2003, was that an investigation had failed to substantiate his complaints.

In grievance no. 1918, Encalade complained that he was not receiving his proper diet, in that he was being given cold processed meat and that the utensils were not being cleaned properly. The response was that the Diet for Health, which Encalade was on, did not have processed meats, and that the utensils are being properly sanitized. In his Step Two appeal, Encalade again says that inmates on the Diet for Health are eating improper foods and that the utensils were being cleaned in garbage cans without proper sanitization. The response, dated January 3, 2005, was that he had been appropriately advised at the Step One level and that the food service department was following the guidelines in the Food Service Manual.

In grievance no. 3787, Encalade complained that the Texas prison system had a $2.4 billion budget, but despite this, there had not been a dishwasher in the Eastham Unit since September of 2003. He says that this promotes meningitis, hepatitis, and other contagious diseases. The response was that this issue had already been addressed in a previous grievance. Encalade filed a Step Two appeal, and the response that he had been appropriately advised. The record also contains indications that Encalade filed other grievances, which were screened for various reasons, including submission of more than one grievance in a seven-day period.

The Fifth Circuit has stated that a grievance should be considered to the extent that it gives prison officials a fair opportunity to address the problem which will later form the basis of the lawsuit. Johnson v. Johnson, 305 F.3d 503, 517 (5th Cir. 2004). The Court specifically noted that for certain types of complaints, such as a claim that a cell was habitually infested with vermin, could adequately alert administrators to the problem whether or not the grievance names anyone. Johnson, 385 F.3d at 517. In this case, Encalade's grievance no. 4775 adequately alerted prison administrators to his complaint that there was no dishwashing machine and that the procedures used were insufficient. This provided prison administrators with adequate information with which to address

the problem. The Court has therefore concluded that Encalade sufficiently exhausted his administrative remedies.

However, Encalade faces another significant obstacle to his claim, in that there is no showing that he has suffered any harm from the conditions complained of. Encalade's certified authenticated medical records, which were offered into evidence at the Spears hearing, contain no indication that he has ever suffered any adverse health consequences traceable to the food or beverages served at the Eastham Unit. Although he wrote to the medical department complaining that his stomach hurt, no examinations ever verified that he was experiencing any adverse consequences as a result of the food. Even during the time that Encalade says that another wing was being quarantined, which was late September and early October of 2004, his medical records show no indication that he was suffering harm which was more than *de minimis*. *Cf.* James v. Alfred, 835 F.2d 605, 607 (5th Cir. 1988) ("isolated incidents of non-remarkable proportions" not constitutional violations). While Encalade alleges that he suffers from undefined "digestive diseases," this self-diagnosis is not sufficient summary judgment evidence. *See* Aswegan v. Henry, 49 F.3d 461, 465 (8th Cir. 1995); *accord*, Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion).

As a general rule, for a Section 1983 claim to be viable, the plaintiff must allege an injury. Memphis Community School District v. Stachura, 477 U.S. 299, 308 (1986). Although Encalade asserts that other inmates were quarantined and even that at least one prisoner died (albeit of unknown causes), he cannot complain of the violations of other persons' rights. Coon v. Ledbetter, 780 F.2d 1158, 1159 (5th Cir. 1986). Encalade has failed to show that he ever suffered any harm, and so to the extent that a showing of such harm is required, his claim is without merit. Under certain circumstances, a showing of actual past harm is not necessarily required. *See* Helling v. McKinney, 113 S.Ct. 2475, 2482 (1993) (inmate who complained of exposure to second-hand smoke need not necessarily show that he has already suffered harm); Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995).

In Horton, the Fifth Circuit held that to prevail, the plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977.

There is no concise definition of what types of prison conditions pose a "substantial risk of serious harm" under the Eighth Amendment. Instead, the Fifth Circuit said, this component of the test must be examined conceptually, making sure to be responsive to "contemporary standards of decency." The Court must consider "whether society considers the risk...to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Horton, 70 F.3d at 401. The Court noted that prison authorities must protect not only against current threats, but also must guard against "sufficiently imminent dangers" that are likely to cause harm "in the next week or month or year." Horton, 70 F.3d at 401.

In this case, Encalade has not shown that the fact that the Eastham Unit does not have a dishwasher is a condition "posing a substantial risk of serious harm," nor has he shown that this is a "sufficiently imminent danger." Despite Encalade's perfervid pleadings, the mere fact that the Eastham Unit does not have a dishwashing machine does not automatically show that the sanitation is lacking, much less that unconstitutional conditions exist.[2] By Encalade's own account, this condition has been ongoing since September of 2003, yet the medical records fail to reflect a single instance in which he has suffered any harm at all as a result of it. Nor has he shown that "contemporary standards of decency" are offended by the fact that prisoners must wash dishes by hand rather than in a machine.

---

[2] Approximately 40 percent of American homes do not have dishwashers, according to the Association of Home Appliance Manufacturers. *See* http://64.233.167.104/search?q=cache: e4ri4CXMTZoJ:www.aham.org/industry/ht/action/GetDocumentAction/id/5369+percentage+ homes+ dishwashers&hl=en&gl=us&ct=clnk&cd=30

In addition, Encalade has not shown that the prison officials were deliberately indifferent to the safety of the prisoners. With regard to the issue of deliberate indifference, the Supreme Court has stated that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); see Horton, 70 F.3d at 400.

In this case, there is no showing that the prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, much less that they drew such an inference. Although Encalade refers to illnesses, quarantines, and even deaths of other inmates, he offers little competent summary judgment evidence to show that these incidents even occurred, and none at all to show that any of them were linked to the dishwashing practices of the Eastham Unit.

Similarly, the fact that dishes were washed in containers of the type commonly used as garbage cans does not show a constitutional violation because Encalade does not show nor even allege that these receptacles were ever actually used for garbage. A 55-gallon plastic container may be called a "trash can" or a "garbage can," but used for other purposes, such as a large container in which to wash dishes. Encalade has failed to show that this circumstance violates the Constitution or gives rise to a substantial risk of harm. This claim is without merit.

Encalade complains, in a vague manner, that the cups and water pitchers have "food particles" in them. As a general rule, the Constitution requires that inmates be provided with reasonably adequate food. George v. King, 837 F.2d 705, 707 (5th Cir. 1987). This standard includes the providing of clean utensils; consequently, the Constitution does not require that all utensils be washed perfectly on all occasions, but merely that reasonably adequate sanitation

10

procedures be employed. An occasional imperfect washing, while unfortunate and to be avoided, does not amount to a constitutional violation. *See* George, 837 F.2d at 707 (isolated case of food poisoning, although suffered by numerous inmates, not a constitutional violation). Encalade has not shown that the prison officials failed to meet this standard; the very fact that Encalade has experienced no adverse effects requiring medical care resulting from a circumstance which has existed since September of 2003 indicates that the sanitation procedures, while not perfect, are at least adequate, which is what is required by the Constitution. Encalade's claim on this point is without merit.

Finally, Encalade complains that the sheets and towels are not cleaned adequately. He filed a Step One grievance on July 5, 2004, complaining that his line had gone two months without getting clean sheets and towels. The response was that towels and sheets were passed out on June 8, 15, 22, and 28, 2004. In his Step Two grievance, Encalade says that sheets were brought on July 5, but no towels. He says that the Step One response was a "known fabrication" and that this practice is "a major health risk." The response was that the complaint was properly addressed at Step One and that if he felt like he was being denied a towel, he should contact a shift supervisor to attempt informal resolution prior to filing a grievance.

In a Step One grievance filed on January 18, 2005, Encalade complained that the unit was refusing to pass out towels, which he says is a "deprivation of hygiene and promotion of contagious diseases.' The response was that inmates pick up clean towels when they go to shower, and that the weekly allotment given is two sheets and one towel. The stock was checked and the unit possessed adequate towels. Encalade did not file a Step Two appeal of this grievance.

On May 6, 2003, Encalade filed a Step One grievance complaining that no towels were given to inmates even though that was the day that they were supposed to exchange towels. The response was that the unit was currently understocked on face towels and there were not enough to do a full one for one exchange; as stock levels increase, a more accurate one for one exchange could be done.

Once again, the competent summary judgment evidence contains no indication that he has suffered any harm as a result of the purportedly faulty sheet and towel exchanges, nor does he even allege that he has suffered any harm. The responses to Encalade's grievances indicate that while there was a problem in 2003, when he was told that there were not enough towels for a full exchange, this problem appeared to be alleviated by 2005, when the grievance response indicated that the unit was adequately stocked.

In addition, Encalade has not shown that the fact that he did not get clean sheets and towels as often as he believed appropriate is a condition which poses a substantial risk of serious harm, nor that the prison officials are deliberately indifferent to the safety or needs of the inmates. Neither has he shown that this circumstance offends contemporary standards of decency.

The Fifth Circuit has held that indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 346-7 (1981). In compliance with the Supreme Court's opinion, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience. Wilson, 878 F.2d at 849. Encalade has not shown that the fact that clean towels and sheets are not distributed as often as he would like is a violation of the Constitution of the United States.

## Immunity

The Defendants pleaded the defense of qualified immunity in their motion for summary judgment. The Fifth Circuit has held that to prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. To determine whether relief is appropriate, the court must undertake a two-step analysis.

First, the Court must evaluate whether a "plaintiff's allegations, if true, establish a constitutional violation." Second, if a constitutional violation is found to have occurred, the court must determine whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003), *citing* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

In Hope, the Supreme Court reiterated the standard for a constitutional right to be clearly established, as follows:

> Its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ....but it is to say that in the light of pre-existing law. the unlawfulness must be apparent."

Hope, 536 U.S. at 739, 122 S.CT. AT 2515, *citing* Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The Supreme Court went on to clarify that the factual situation from which the pre-existing constitutional right developed does not have to be "fundamentally similar" to the one before a court when addressing qualified immunity. Rather, qualified immunity can be overcome as long as prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. The Court concluded that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 740-41, 122 S.CT. AT 2515-16.

The law was clearly established at all times relevant to this lawsuit that prisoners have the right to be free from incarceration under conditions "posing a substantial risk of serious harm" which result from the deliberate indifference of prison officials. Horton, 70 F.3d at 401. In this case, however, even when viewed in the light most favorable to the Plaintiff, the competent summary judgment evidence shows that there are no disputed issues of fact and that the Defendants are entitled to judgment as a matter of law. Furthermore, a reasonable prison official would not believe that the actions of the Defendants violated any clearly established constitutional rights. *See* Brawner v. City

of Richardson, Texas, 855 F.2d 187 (5th Cir. 1988); Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995). Consequently, the Defendants are entitled to the defense of qualified immunity.

The Defendants also contend that they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities. A lawsuit brought against state actors in their official capacity is in effect brought against the State of Texas, and is thus barred by the doctrine of sovereign immunity. Hafer v. Melo, 112 S.Ct. 358, 363 (1991). For this reason, the Defendants are entitled to absolute Eleventh Amendment immunity from any claims which may be brought against them in their official capacity.

## Conclusion

The Court has carefully examined the record in this cause, including the Plaintiff's pleadings and testimony, the motions for summary judgment submitted by the Plaintiff and the Defendants, the Plaintiff's response to the Defendants' motion, all summary judgment evidence properly before the Court, and all other pleadings, documents, and records in this case. Upon such review, the Court has determined that there are no disputed issues of material fact and that the Defendants are entitled to summary judgment on the claims against them. The Court has further concluded that the Defendants are entitled to the defense of qualified immunity. It is accordingly

ORDERED that the Defendants' motion for summary judgment is GRANTED and that the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that the Defendants' claim to qualified immunity is GRANTED and that the Defendants' claim to absolute immunity is GRANTED to the extent that any claims are brought against them in their official capacity. Finally, it is

ORDERED that all other motions which may be pending in this action, including the Plaintiff's motion for summary judgment, are hereby DENIED.

So **ORDERED** and **SIGNED** this **30** day of **May, 2006.**

JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

14